285 F.2d 536
 TEXAS EASTERN TRANSMISSION CORPORATION, Appellant,
v.
R. L. BARNARD, T. T. Barnard and Lenora Barnard, Dillard R.
Douglas and Wingate E. Douglas, Billy Perry Patterson,
Lorena Perry Patterson, and Shirley Patterson, W. C. Clay,
and Jimmy P. Evans, Appellees.
 No. 14057.
 United States Court of Appeals Sixth Circuit.
 Dec. 15, 1960.
 
 Joseph E. Stopher, Louisville, Ky., (Joseph E. Stopher, A. J. Deindoerfer, Boehl Stopher Graves & Deindoerfer, Louisville, Ky., and Henry H. Bramblet, Mt. Sterling, Ky., on the brief), for appellant.
 William C. Clay, Jr., Clay & Edwards, Mt. Sterling, Ky., for appellee.
 Before McALLISTER, Chief Judge, and MILLER and WEICK, Circuit Judges.
 McALLISTER, Chief Judge.
 
 
 1
 Appellant, an interstate pipe-line company, entered into a contract with appellee owners of real estate, for a right-of-way over the latter's property for the purpose of constructing a pipe-line thereon, and repairing and inspecting it. The contract provided that in case of differences between the parties, any controversy between them should be submitted to arbitration; that if either party should demand arbitration, and the other party should fail and refuse to designate an arbitrator within thirty days after written request therefor, then the arbitrator designated by the party requesting arbitration should have the right to make an ex parte determination.
 
 
 2
 Appellees, an August 7, 1958, following claims of damage to their property as a result of excavations by the pipeline company, made a written request for arbitration and gave motice of such request to appellant company, which received the notice on August 11, 1958. Appellees did not, however, publicly designate or identify the arbitrator they had chosen until thirty days had expired after the date of their request. After receiving the notice of request for arbitation, appellant delayed naming an arbitrator or replying to the request, while awaiting further notice from appellees indicating the name of the arbitrator they had selected. Appellant did not thereafter receive any notice from appellees identifying their arbitrator. However, on September 12, 1958, appellant company received notice from E. A. Crooks, informing it that he was the arbitrator for appellees, and that he would hear the controversy troversy on September 16, 1958, four days thereafter. This notice had been mailed to appellant within three days of the expiration of the thirty-day period provided for designation of arbitrator by the party receiving notice of request for arbitration-- in this case, appellant company.
 
 
 3
 On the same day on which it had received notice from E. A. Crooks that he had been appointed arbitrator appellees, and that he would hear the contoversy four days thereafter, appellant company notified appellees of its appointment of Henry L. Jones as its arbitrator, and stated that Mr. Jones would meet with the aribitrator for appellees at the time and place specified by him for the purpose of designating a third arbitrator, such designation of a third arbitrator being provided for in the agreement for arbitration. On the day following appellant's designation of its arbitrator and its offer to meet with the arbitrator of appellees in order to appoint a third arbitrator, counsel for appellees informed appellant that appellant's letter appointing its arbitrator came too late. At the time that counsel for appellees sent this letter refusing to consider appellant's appointment of its arbitrator, the thirty-day period for such selection by appellant had expired only seven days before. Appellees' arbitrator, however, had not, at that time, proceeded to hear the controversy, and, according to his notice to appellant, was not going to do so for another three days, that is, on September 16, 1958. Appellant immediately proceeded to prepare a complaint in the District Court under Section 4 of the United States Arbitration Act, Title 9 U.S.C.A. 1 et seq., seeking an order that the arbitration proceed as appellant claimed, in accordance with the contract of arbitration, rather then ex parte, as resolved upon by appellees.
 
 
 4
 However, appellees' arbitrator, on September 16, 1958, proceeded to hear and dispose of the controversy without any participation therein by appellant's arbitrator, or by appellant's arbitrator and a third arbitrator, whom appellant wanted to appoint in agreement with appellees' arbitator. On the same day, by order dated September 16, 1958, and subscribed and sworn to on September 17, 1958, appellees' arbitrator adjudged appellant to be liable for damages caused to appellees in the amount of $81,233.63 with interest at 6% To run from September 16, 1958, until paid.
 
 
 5
 At the hearings by the sole arbitrator, counsel for appellant company appeared and protested the procedure adopted by appellees as arbitrary and further objected to the holding of the hearing on the grounds, among others, that appellees, in giving notice of the arbitration, had failed to name their own arbitrator; that Mr. Crooks, as appellees' arbitrator, had failed to notify appellant of the hearing on September 16, 1958, in time to permit adequate preparation by appellant; and that appellees had refused to permit appellant to appoint its arbitrator. Mr. Crooks, undeterred by these arguments, overruled all objections and proceeded to the hearing as above set forth. Appellant, accordingly, refused, at that time, to recognize the validity of the proceeding and declined to participate in the hearing, to avoid the charge, that might be made in the future, that it had waived the claimed irregularities.
 
 
 6
 After the findings of Mr. Crooks were made, appellant amended the complaint it had filed prior to the hearing before the sole arbitrator, seeking an order derecting the arbitration to proceed in accordance with the agreement, instead of before a single arbitrator. In the amendment to its complaint, appellant set forth the proceedings held by Mr. Crooks, and sought to vacate them for various reasons, among them that Mr. Crooks refused to permit it to appoint an arbitrator; in failing to notify it of the hearing in time to permit adequate preparation; in further refusing to permit, or to conduct, the arbitration in accordance with the terms of the arbitration agreement; and in conducting the hearing under the conditions above mentioned.
 
 
 7
 In answer to the amended complaint, appellees moved to dismiss, and upon motion by both parties for summary judgment, the District Court denied appellees' motion to dismiss, and both motions for summary judgment. Thereafter, upon submission of the case on the pleadings, affidavits, and exhibits accompanying them, the District Court filed an opinion and, in a judgment in accordance therewith, denied all the claimed relief to appellant, and entered judgment on a counterclaim of appellees, which was based upon the September 16, 1958 awards of Mr. Crooks as sole arbitrator, which resulted in the entry of judgments in favor of appellees against appellant in the aggregate amount of $81,233.63 with interest to run from September 16, 1958.
 
 
 8
 The basis of the judgment of the District Court, in so far as here relevant, was that appellant had not appointed its arbitrator, in accordance with the terms of the contract of arbitration, within thirty days after it had received from appellees notice of demand for arbitration; that because of its default in not appointing its arbitrator within the thirty-day period, it was not entitled to appoint one thereafter; and that the sole arbitrator appointed by appellees acted properly in proceeding to a hearing and disposition of the controversy, without permitting the participation of the arobitrator appointed by appellant after the thirty-day period, but which appointment had been made before the hearing.
 
 
 9
 Appellant submits that it complied with the arbitration contract, and that the arbitrator wrongfully refused to permit its arbitrator to participate in the selection of a third arbitrator and to engage in the hearing. It claims that while it may have failed to appoint its arbitrator within thirty days of appellees' written request for arbitration, it did not refuse to do so, and that the arbitration agreement only provides: 'If either party shall demand arbitration and the other party shall fail and refuse to designate an arbitrator within 30 days after written request therefor, then the arbitrator designated by the party requesting arbitration shall have the right to proceed independently to make a determination as authorized by this provision.'
 
 
 10
 Appellees rely upon Kentucky River Mills v. Jackson, 6 Cir., 206 F.2d 111, 47 A.L.R.2d 1331, involving an arbitration agreement similar to the one before us. There it was provided that if either party failed to appoint an arbitrator within seven days after receiving the other party's nomination of an arbitrator, the one arbitrator might act as sole arbitrator. When one of the parties, in that case, was informed that the other had appointed an arbitrator, he replied by saying that he recognized no obligation under the contract of arbitration, and refused to appoint an arbitrator. Thereafter, the single arbitrator proceeded with an ex parte hearing; and his determination was upheld by this court. In the Kentucky River Mills case, the outright refusal by one of the parties to appoint an arbitrator, in accordance with the requirement of the contract of arbitration, distinguished that adjudication from the facts in the instant case, where appellant not only appointed an arbitrator before the hearing, but insisted on participating in the arbitration proceedings.
 
 
 11
 Moreover, it is contended by appellant that a fair reading of the contract of arbitration requires that appellant be informed by appellees of the appointment of their arbitrator and their identification of him to appellant, and that by failing to inform appellant that it had selected an arbitrator and failing to identify who such arbitrator was, appellees deviated from the arbitration agreement, as properly interpreted, and further misled appellant to its prejudice by leading it to wait for receipt of such infnformation beyond the thirty-day period provided for the selection of its arbitrator.
 
 
 12
 Appellant further submits that its grievance, arising out of the foregoing, called for the equitable consideration of the Trial Court in order that it be granted the relief sought to the effect that the awards of the sole arbitrator be vacated, annulled, and set aside, and that the District Court enter an order directing that the arbitration proceed in the manner as provided in the arbitration agreement.
 
 
 13
 It is, indeed, a hardship which appellant suffered by reason of the arbitration proceeding being conducted ex parte because of the fact that it di not comply strictly with the thirty-day provision within which to appoint its arbitrator. As was stated in Kentucky River Mills v. Jackson, 6 Cir., 206 F.2d 111, 117: 'It is to be said that an arbitration by an arbitrator appointed by one of the parties only may well result in a degree of advantage to the other party, for mere personal friendship with one of the parties does not disqualify an arbitrator, and an arbitration carried on by such an arbitrator would not be contrary to ordinary concepts of fairness, although one would hardly be considered vigilant of his interests if he failed to appoint an arbitrator himself when he was entitled to do so.'
 
 
 14
 In our view, the controlling consideration in this case is that, in the provisions of the arbitration agreement relating to the time within which appellant was to appoint its arbitrator, time was not of the essence of the contract. At law and in equity, the question is one of construction to be determined by the intent of the parties and time is, ordinarily, not of the essence, unless it is made so by express stipulation, or unless something in its nature, or connected with its purpose, makes it apparent that the parties intended the contract to be performed within the time specified. Central Contracting Co. et al. v. Grignon, 8 Cir., 255 F. 952.
 
 
 15
 Nothing in this case indicates that it was the intention of the parties that time should be considered of the essence of the agreement, with regard to the period of time in which the arbitrator was to be chosen; and it was not made so by express stipulation.
 
 
 16
 Appellees proceeded under Section 4 of the United States Arbitration Act. In Utility Oil Corporation, D.C.N.Y., 10 F.Supp. 678, 680, 681, in an opinion by the late Judge Robert P. Patterson, it was held:
 
 
 17
 'The United States Arbitration Act of 1925 (9 U.S.C.A. 1 et seq.) * * * had for its purpose the extension of the remedy of specific performance to agreements for arbitration * * *. When a party applies for an order under section 4 of the act (9 U.S.C.A. 4), to compel his opponent to proceed with arbitration, he is seeking relief in the nature of specific performance * * * and must abide by the rules applied by courts of equity to cases of that type * * *. And it is a familiar rule in suits for specific performance that equity does not treat a stipulation in respect of time as being of the essence of the contract unless the parties have very plainly made it so, despite the fact that a court of law would deem the time requirement to be of the essence * * *. If the situation of the parties has not changed and a party who is strictly in default has acted in good faith and has been reasonably diligent, delay in his performance will generally not operate as a forfeiture * * *.
 
 
 18
 'The predominate purpose of the parties to this agreement, as in every arbitration, was to have their disputes determined by a board free from partiality. The parties were to go into the arbitration on even terms. One arbitrator was to be nominated by each party, and the third, if necessary, by the two first named. It is true that the agreement has a subordinate clause that on failure of a party to appoint an arbitrator within twenty-one days after demand, the arbitrator selected by his opponent shall act alone. The validity of the subordinate clause is beyond question, yet considerations of fairness and the evident purpose of the parties will prompt a court of equity to hold it down to strict limits. In the conduct of arbitrations it sometimes happens that an arbitrator puts loyalty to his nominator above his duty to be impartial. Such a practice is recognized as an unfortunate one and has been condemned * * *. With all the arbitrators representing one party only, the party unrepresented would in some cases by at the mercy of his opponent and the result a foregone conclusion. In view of these possibilities, the fair and equitable interpretation of the agreement is that the parties intended this subordinate clause to operate where one party unreasonably neglected or refused to appoint its arbitrator within twenty-one days, and not in all manner of cases. If an appointment was made only two days late and the delay was due to mistake as to dates, few would be so carping as to contend that the appointment was ineffective and that the arbitrator appointed by the other party could decide the dispute alone. From this fact the fair conclusion is that the time of appointment was not regarded as of the essence under the arbitration clause.' See also Hayes Mfg. Corporation v. McCauley, 6 Cir., 140 F.2d 187.
 
 
 19
 In accordance with the foregoing, the judgment is reversed and the case remanded to the District Court with directions to enter judgment vacating the awards, and directing that arbitration proceed in accordance with the contract.